# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THOMAS F. ARMOUR,
Individually and on behalf of all others
similarly situated,

        *Plaintiffs*,

vs.

        Case No. 10-2136-EFM

TRANSAMERICA LIFE INSURANCE
COMPANY, formerly known as PFL Life
Insurance Company,

        *Defendant*.

## MEMORANDUM AND ORDER

Plaintiff Thomas F. Armour, individually and on behalf of all others similarly situated, originally filed this action in the District Court of Johnson County, Kansas. Defendant Transamerica Life Insurance Company removed the case asserting that this Court has original jurisdiction under the Class Action Fairness Act ("CAFA"). The matter is now before the Court on Plaintiff's Motion to Remand to State Court (Doc. 14). For the following reasons, the Court denies Plaintiff's motion.

## I. Factual and Procedural Background

On February 5, 2010, Plaintiff Thomas F. Armour, on behalf of himself and all others similarly situated, filed this action in the District Court of Johnson County, Kansas. Plaintiff resides in Leawood, Kansas. Defendant Transamerica Life Insurance Company is a corporation incorporated and with its principal place of business in Iowa. Transamerica is authorized to do business in Kansas. Prior to March 1, 2002, Transamerica was known as PFL Life Insurance

Company.

Plaintiff alleges that he and others purchased and renewed Long-Term Care Insurance policies, which provided for nursing home confinement, from PFL and Transamerica. He contends that he and others similarly situated have been damaged as a result of Defendant's negligence, fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, breach of contract, and unjust enrichment. Plaintiff contends that these damages occurred due to material defects in the original pricing and actuarial assumptions. Plaintiff asserts that his total annual premium in 1996 was $1,143, and his total annual premium increased over the years to $2,579.52 in 2005.

Plaintiff proposes to represent a class of all Kansas residents who purchased a LTC policy from Transamerica, or its predecessor PFL. Plaintiff alleges that there are common questions of law or fact to the class, including: (1) whether Defendant fraudulently failed to disclose the known risk of multiple premium increases for the policies, and fraudulently misrepresented that the policies would be guaranteed renewable; (2) whether Defendant failed to disclose that its policies may involve risk shifting and of their plan to shift known actuarial defects with the original pricing and actuarial assumptions of the policies to the policyholders; (3) whether Defendant fraudulently failed to disclose that it was engaged in low-ball pricing and was paying high commissions to encourage the sale of the lower priced policies rather than high priced level-premium policies sold by competitors; (4) whether Defendant is liable to Plaintiff on the legal theories of negligence, fraud, negligent misrepresentation, breach of contract, and unjust enrichment; (5) whether Plaintiff has been damaged by Defendant's conduct: and (6) whether Defendant is liable to Plaintiff for punitive damages.

In the petition, Plaintiff alleges that neither Plaintiff nor any member of the class seeks damages exceeding $75,000. Plaintiff contends that he does not seek any form of "common" recovery, but rather an individual recovery not to exceed $75,000 for any class member, inclusive of interest and attorneys' fees and all relief of any nature sought. Plaintiff's request for relief seeks an award of damages for himself and the Class and for punitive damages, together with interest and costs of suit.

On March 9, 2010, Defendant filed its Notice of Removal alleging that this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA") because there are at least 100 members in the proposed class, and the amount in controversy exceeds $5 million in the aggregate. Defendant attached an affidavit from Warren Jones, Senior Vice President and Chief Actuary for the long-term care operations of Transamerica. In this affidavit, Jones avers that he understands Plaintiff's petition to propose a class action of all Kansas residents who purchased a LTC policy, and as of December 31, 2009, there are 4,683 in-force LTC policies issued in Kansas. Jones further avers that the Kansas Department of Insurance has approved an additional $6,441,652 in premiums, by way of rate increases, over the lifetime of the LTC policies issued in Kansas which are in-force as of December 31, 2009. The figure does not include the underlying original premium amount or rate increases for policies no longer in effect as of December 31, 2009.

Plaintiff filed a Motion to Remand asserting that Defendant did not satisfy its burden of proof for removal. Plaintiff does not dispute the amount of members in the proposed class, but rather, the sole issue is whether Defendant has met its burden in establishing that the requisite amount in controversy exceeds $5 million.

## II. Legal Standard

A civil action filed in state court is only removable if the action could have originally been brought in federal court.[1] Jurisdiction based on subject matter requires that the amount in controversy exceed $75,000 and that each defendant is a resident of a different state than each plaintiff.[2] Under CAFA, which was enacted on February 18, 2005, federal courts have subject matter jurisdiction over a putative class action if "at least one plaintiff class member is diverse from one defendant and where the amount in controversy exceeds $5 million."[3]

Federal removal jurisdiction is statutory in nature and is to be strictly construed.[4] "There is a presumption against removal jurisdiction," and the burden is on the removing party to show the propriety of the removal.[5] Any doubts about the validity of removal are resolved in favor of remand.[6]

"The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal."[7] The party requesting removal bears the burden in establishing the underlying jurisdictional facts to support the amount in controversy.[8] "The amount in controversy is not proof of the amount the plaintiff will recover,"

---

[1] 28 U.S.C. § 1441(a).

[2] 28 U.S.C. § 1332.

[3] *Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1313 (10th Cir. 2007) (citing 28 U.S.C. § 1332(d); *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1092 (10th Cir. 2005)).

[4] *First Nat'l Bank & Trust v. Nicholas*, 768 F. Supp. 788, 790 (D. Kan. 1991).

[5] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[6] *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

[7] *Laughlin*, 50 F.3d at 873.

[8] *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008).

but rather, "it is an estimate of the amount that will be put at issue in the course of the litigation."[9]

In *McPhail v. John Deere Co.*, the Tenth Circuit found that when the face of a complaint is silent regarding the amount in controversy, the removing party must establish by a preponderance of the evidence that removal is proper.[10] "The proponent of federal jurisdiction must prove contested *facts*; and because a defendant has no control over the complaint, he cannot put a large sum of money in controversy simply by demanding it, as a plaintiff often can."[11] "[O]nce those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake. If the amount is uncertain then there is potential controversy, which is to say that at least $75,000 is in controversy in the case."[12]

## III. Analysis

As an initial matter, the Court will address whether Plaintiff specifically pled less than the jurisdictional amount. In Defendant's Notice of Removal, it asserted that Plaintiff's complaint was silent as to the amount in controversy under CAFA and that Defendant must establish the amount in controversy by a preponderance of the evidence. In a footnote, Defendant noted that "[i]n an obvious attempt to deprive" Defendant of a federal forum, Plaintiff alleged individual damages less than $75,000. However, Defendant claimed that these allegations were irrelevant to CAFA's $5 million amount-in-controversy requirement.

---

[9] *Id*. at 956.

[10] *Id*. at 953-55.

[11] *Id*. at 954 (emphasis in original).

[12] *Id*.

In passing, Plaintiff contends that Defendant concedes in its Notice of Removal that Plaintiff's complaint is drafted in a manner to avoid federal jurisdiction. Although Plaintiff specifically avers in his complaint that the jurisdictional amount for each plaintiff is less than $75,000 and they are not seeking a common recovery, Plaintiff does not specifically reference the $5 million amount under CAFA.[13] Claims brought under CAFA "shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."[14] Because Plaintiff does not specifically allege that the class seeks damages of less than $5 million, it does not appear that Plaintiff specifically limits his claim to less than the jurisdictional amount.[15] Furthermore, both parties proceed under the preponderance of the evidence standard articulated by the Tenth Circuit in *McPhail*; therefore, the Court will apply this standard as well.[16]

In *McPhail*, the circuit set forth several ways in which a removing party may meet its burden under the preponderance of the evidence standard.[17] The first inquiry is the complaint itself, and "the defendant may rely on an estimate of the potential damages from the allegations in the

---

[13]*Cf. Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245, 1246 (D. Kan. 2009) (specifically alleging "[c]lass-wide, Plaintiff does not seek or claim in excess of $5 million, exclusive of interest and costs.") and *Eatinger v. BP Am. Prod. Co.*, 524 F. Supp. 2d 1342, 1345 (D. Kan. 2007) (specifically claiming "less than the $75,000 and $5 million requisite amount in controversy for his individual claim and class action claim respectively.").

[14]28 U.S.C. § 1332(d)(6).

[15]Although Plaintiff contends that he has "repeatedly asserted that he does not seek damages for all premium increases but rather only premium increases relating to actuarial defects," Plaintiff does not contend that he seeks less than the jurisdictional amount of $5 million under CAFA. Notably, Plaintiff does not specifically address the jurisdictional amount.

[16]Both parties rely on several District of Kansas cases invoking a higher standard for removal. In those cases, the plaintiff specifically pled less than the jurisdictional amount. Thus, the District of Kansas applied a higher removal standard of "reasonable probability" rather than a preponderance of the evidence standard. *See Coca-Cola Bottling of Emporia, Inc. v. South Beach Beverage Co., Inc*, 198 F. Supp. 2d 1280 (D. Kan. 2002); *see also Eatinger*, 524 F. Supp. 2d 1342. To the extent that these cases utilized the higher standard of "reasonable probability" for removal, the Court will not apply that standard to the facts of this case.

[17]*McPhail*, 529 F.3d at 955-56.

complaint."[18]  "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."[19]  This may include evidence from the defendant's employees or experts regarding how much it would cost to meet the plaintiff's demands or by reference to plaintiff's proposed settlement amount.[20]  However, general allegations are insufficient, as well as dollar estimates linked to an erroneous reading of the plaintiff's complaint.[21]

Plaintiff first contends that Defendant's Notice of Removal is insufficient because Defendant improperly modifies the Complaint by erroneously asserting that the controversy concerns all premium increases, rather than premium increases as a result of an actuarial defect.  Defendant contends that Plaintiff now attempts to limit his allegations to avoid federal jurisdiction, but the Complaint places at issue all of the rate increases imposed on the putative class.

The Court finds that a fair reading of the Complaint puts all premium increases at issue. Although Plaintiff references premium increases due to material defects in actuarial assumptions, these allegations are also interspersed with other allegations challenging premium increases because of low-ball pricing, high commissions, and inadequate underwriting.  In addition, Plaintiff alleges damages because he was locked in a situation of paying ever-increasing policy premiums, and Defendant will be unjustly enriched if it is allowed to retain the wrongfully increased premium

---

[18]*Id.* at 955.

[19]*Id.* at 956 (citing *Meridian v. Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

[20]*Id.* at 956.

[21]*Id.* at 955.

amounts.  Other allegations include that had Plaintiff known of the true facts, he would not have initially purchased or renewed these defective policies.[22]  The Court cannot conclude that Defendant erroneously read the Complaint.

In addition, although Plaintiff contends that only increases related to defective actuarial assumptions are at issue in the lawsuit, Plaintiff does not specifically identify these defective assumptions in its Complaint.  In Plaintiff's briefing, he identifies eight specific relevant actuarial standards, but with the exception of one, these are not included in Plaintiff's complaint.[23]  Instead, Plaintiff's Complaint contains numerous allegations that conceivably put all premium increases at issue.

To determine what is at issue, the Court must examine the complaint and notice of removal.[24]  Although Plaintiff is not required to plead evidence that he does not intend to submit, Plaintiff must provide sufficient allegations.  Defendant is not required to guess from Plaintiff's complaint which specific actuarial assumptions are at issue in an effort to link the actuarial assumption to a specific premium increase.[25]  As noted above, the allegations appear to place all the premium increases at issue.

Plaintiff also asserts that Defendant fails to submit admissible evidence of the type required to sustain its burden because Defendant offers no facts, data, or underlying analysis of the amounts

---

[22]This would appear to put the original price of the policy at issue.  Defendant does not include the original premium price in its figure to support removal jurisdiction.

[23]Plaintiff identified high lapse rates in his Complaint.  Notably, however, Plaintiff did not claim that this was the exclusive defective actuarial assumption.

[24]*Laughlin*, 50 F.3d at 873.

[25]Even in Plaintiff's briefing, Plaintiff does not identify which actuarial assumptions are at issue instead asserting that Plaintiffs seek damages for only the increases related to application of *one or more* of the identified eight actuarial assumptions.

in controversy due to the operation of the actuarial assumptions. Because this argument is based on Plaintiff's contention that Defendant erroneously read the complaint, which the Court cannot so find, Plaintiff's argument is without merit. Defendant provided an affidavit with its Notice of Removal. In this affidavit, Defendant's Senior Vice President and Chief Actuary, averred that he understood the Complaint to propose a class of "all Kansas residents who purchased an LTC policy sold by Transamerica or its predecessor PFL." This is also a fair reading of the Complaint as that is specifically what the Complaint proposed.

Defendant identified the total number of in-force LTC policies owned by Kansas residents as 4,683, and the amount of premium increases, over the lifetime of these specific policies, as $6,441,652. Defendant provided underlying jurisdictional facts based on a fair reading of the Complaint. As such, Defendant has established by a preponderance of the evidence the underlying jurisdictional facts that the amount in controversy may exceed $5 million in the aggregate.[26] Because Defendant has demonstrated by a preponderance of the evidence that the amount in controversy may in the aggregate exceed $5 million, it is incumbent on Plaintiff to demonstrate to a legal certainty that an amount less than $5 million is at issue. Plaintiff does not address this issue as Plaintiff does not specifically address the jurisdictional amount.

---

[26]This figure only takes into account the premium increases. It does not include the original price for the policies nor an estimate for punitive damages which may also be an amount at issue. In addition, Plaintiff set forth in the Complaint that his original premium amounted to $1,143, and his total annual premium increased over nine years to $2,579.52. This is an increase of approximately $1,400. Defendant averred in its Notice of Removal that there were 4,683 policies in place in Kansas as of December 31, 2009. If each policy holder had a similar increase of approximately $1,400, this would amount to approximately $6,500,000.

**IT IS ACCORDINGLY ORDERED** that Plaintiff's Motion to Remand (Doc. 14) is hereby

**DENIED.**

**IT IS SO ORDERED**.

Dated this 20th day of October, 2010.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE